James D. Lynch

*v.*

William C. Malley *et al.*

*Opinion filed June 23, 1905.*

1. Elections—*voting by ballot does not necessarily mean by use of paper tickets.* Voting by ballot does not necessarily mean by the use of paper tickets, but includes any method of voting which preserves the secrecy of the vote.

2. Constitutional law—*Voting Machine act of 1903 is not invalid.* The act of 1903, (Laws of 1903, p. 178,) authorizing the use of voting machines at elections and creating a board of voting machine commissioners, is not in violation of section 2 of article 7 of the constitution, providing that "all votes shall be by ballot."

3. Same—*what is not a contemporaneous construction by legislature of constitutional provision.* The fact that the legislature has provided a method of voting which contemplates the use of paper tickets does not amount to a contemporaneous construction of the word "ballot," used in constitution, as meaning paper tickets only.

Appeal from the Superior Court of Cook county; the Hon. Jesse Holdom, Judge, presiding.

The appellant, James D. Lynch, filed his bill for relief in the superior court of Cook county against the county of Cook, the city of Chicago, and William C. Malley, Thomas F. Judge and John W. Houston, the board of election commissioners of the city of Chicago.

The bill alleged that the legislature of the State of Illinois passed an act (Laws of 1903, p. 178,) entitled "An act to provide for the use of voting machines at elections, for casting, registering, recording and counting ballots or votes, also creating a board of voting machine commissioners, and defining its duties," which act was approved May 14, 1903, and became in force July 1, 1903; that in and by said act it is provided that any body or board of public officers or any officers charged by law with the duty of providing materials and supplies for holding elections in any city, village, incorporated town, county, precinct, election district or other similar divisions of the State, may, at any general or special election, submit a proposition to the qualified voters thereof to adopt a voting machine, and whenever a majority of the electors of any such city, etc., shall have declared in favor thereof, these officials may purchase or lease voting machines for any or all election precincts. The bill also alleged that at a regular election held in the city of Chicago on November 8, 1904, there was duly submitted to the voters of said city a proposition to adopt voting machines and a majority of all votes was cast in favor of said proposition; that the act further provided that no voting machine should be adopted until the commissioners had made and filed a report certifying that they had examined the machine and that it complied with the requirements of the act; that the three commissioners above named had been duly appointed, and had certified that they had examined four machines, all of which were constructed so as to meet all the requirements of the act, and would cost from $500 to $800 each; that the board, acting in its official capacity, passed a resolution to purchase said machines, and that the said commissioners intended to use said machines in elections. It was further alleged that the act of May 14, 1903, was unconstitutional, null and void and conferred no authority upon said board to purchase said machines or to put them in operation, and that unless said board was enjoined from carrying out and

executing its intention to purchase said machines, great confusion would arise and large, needless and useless expense be created, to the detriment of the tax-payers of the city of Chicago. Numerous other allegations are made which go to the economy and practicability of certain voting machines which the defendants are about to purchase and put into use.

The defendants filed their answer admitting the passage of the act in question and their purpose to act under the same, but denying the unconstitutionality of said statute and denying explicitly all the other averments of the bill. Upon the hearing, which was upon the bill and answer alone, a decree was entered in favor of the defendants and denying the relief prayed by the complainant. From an order dismissing the bill for want of equity this appeal has been prosecuted.

PENCE & CARPENTER, for appellant.

W. W. WHEELOCK, (JOHN BARTON PAYNE, of counsel,) for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The submission in the court below being upon the bill and answer, the latter, upon the disputed questions of fact, was, of course, taken as true by the chancellor and must be so considered here. Therefore we are not called upon to pass upon the advisability, practicability or utility of the use of voting machines which will not, in effect, comply with the requirements of the statute, the answer clearly showing that by tests and other means they have been proven to be such as the statute authorizes to be used. In fact, the constitutionality of the statute of 1903 is the paramount question in the case, and the only one which, in the condition of the record, we feel called upon to decide.

The only provision of the constitution which it is claimed the act is in conflict with, is section 2 of article 7 of the con-

stitution of 1870, which is: "All votes shall be by ballot." The position of counsel for appellant upon which a reversal of the decree below is asked is based upon their definition of the word "ballot," which they insist, within the meaning of the constitution, necessarily means a written or printed ticket or slip of paper containing the names of the persons to be voted for, and they cite in support of the contention, first, several provisions of chapter 37, entitled "Elections," as set forth in Gross' Statutes of 1871 and 1872. These enactments provide that a ballot-box shall be kept; that before any ballot shall be deposited in the box the box shall be publicly opened; that the manner of voting shall be by ballot, and the ballot shall be written or printed, or partly written or partly printed, upon plain paper; that the ballot shall be folded by the voter and delivered to the judge, who shall endorse on the back thereof the number corresponding with the name of the voter on the poll-book; that upon the closing of the polls the judges shall count the ballots in the box, and in case the number of ballots in the box exceed the number of persons who voted, certain ballots in excess shall be destroyed. The contention is, that, applying the rule of contemporaneous construction by the legislature, the language "all votes shall be by ballot," must mean by written or printed ballot.

The several provisions of the acts cited do not assume to define the words of the constitution, but simply provide one method of voting in conformity with those provisions. Of course, under these statutory requirements the word "ballot" means a piece of paper with the names of candidates written or printed thereon, but whether the language of the constitution is limited to that particular meaning or whether it may not mean voting by some other kind of ballot is not in any way construed or defined. It might, we think, with equal propriety be argued that the Australian Ballot law is violative of the constitution, because the legislature, soon after the adoption of the constitution, provided

215  37

a means of voting under it which differs materially from that provided by the present statute. There is here no contemporaneous construction by the legislature of the· question involved,—*i. e.,* what is meant by "ballot."

A ballot is variously defined by standard authorities as a "ballot or ticket used in voting; a little ball used in giving votes; a piece of paper, or other suitable material, with the name written upon it of the person to be voted for." (Anderson's Law Dict. 103; 3 Am. & Eng. Ency. of Law,—2d ed.—768; Cooley's Const. Lim. 604.) In earlier days, when the voter desired to indicate his choice for a candidate he did so by either a showing of the hands or *viva voce.* By either of these methods the voting was necessarily public, and every person might know how others voted. It was to avoid such publicity that voting by ballot was adopted, and we think the constitutional provision here in question simply means that the voting shall be secret, and we understand the proper meaning of the word "ballot." to be secret voting as contradistinguished from that of showing of hands or *viva voce* voting.

In *Brisbin* v. *Cleary,* 26 Minn. 107, speaking of the constitutional provision of that State that "all elections shall be by ballot," etc., after stating that the object of the provision 'was that voting might be in such a way as to secure to the elector the privilege of complete and inviolable secrecy in regard to the person voted for, it was said: "This privilege of secrecy may properly be regarded as the distinguishing feature of ballot voting as compared with open voting, as, for instance, voting *viva voce.* The object of the privilege is the independence of the voter." To the same effect is *Williams* v. *Stein,* 38 Ind. 90; *Temple* v. *Mead,* 4 Vt. 540; *Richie* v. *Richards,* 14 Utah, 345; *Otero* v. *Galegos,* 1 Bartlett's Cong. Election Cases, 177; *People* v. *Ciott,* 16 Mich. 297; *State* v. *Shaw,* 9 S. C. 138. In the latter case it was said: "What, then, is the true and correct meaning of this word 'ballot?' * * * In the Standard French Dictionary

it is defined to mean the act of voting by balls or tickets, by putting the same into a box or urn; secret voting by means of ballot or ticket." And in the same case it is further said: "Ballot represents the one policy and *viva voce* the other." (See, also, *State* v. *Anderson, 26* Fla. 240.)

In *Ex parte Arnold, 28* Mo. 260, the constitutional provision was, that "all elections by the people shall be by ballot," and the Supreme Court of that State, in construing the language, said: "There can be no doubt that these words, without qualification, were understood both by the people and the courts, at the time of the adoption of the constitution, to mean a *secret* ballot. * * * The expression 'elections by ballot' had been expounded and construed by the various courts of last resort, and with entire unanimity they had declared it meant a *secret* ballot, and that the essential principle of this manner of voting was that the elector might conceal from every person the name of the candidate for whom he voted, or the character of his vote upon any question submitted to the electors at an election; that the manifest and obvious purpose was to protect the secrecy of the ballot, in order to guard and protect the voter against intimidation and secure him freedom in the exercise of the elective franchise and reduce to a minimum the incentive to bribe the voter,"—citing Cooley's Const. Lim. (6th ed.) 760-763, McCrary on Elections, (3d ed.) sec. 454, and other cases above referred to.

It is unnecessary to inquire into the meaning of the term as used by literary writers; but it will be found, we think, that generally the word "ballot" has been given the same meaning as that given it by the courts. A ballot originally consisted of a little ball, a bean or a grain of corn, a coin, or any other small article which could be concealed in the hand so that others might not know how the voter cast his ballot. Later a slip or piece of paper was substituted for the ballot, on which were printed or written the names of the candidates to be voted for, and out of this latter method grew our

present elaborate Australian ballot system. Manifestly, it cannot be said that the word "ballot" is restricted, in meaning, to a slip or sheet of paper, or parchment, as seems to be contended by counsel for appellant. From the foregoing authorities it is clear that any manner of voting which preserves the secrecy of the voting is a voting by ballot. Unless it can be said that no other method of secret voting by ballot can be adopted than by the use of paper tickets, and that such paper tickets cannot be used by machine voting, the act of 1903 must be sustained as to its constitutionality. The rule is, that every doubt must be resolved in favor of the validity of the law, and that it can only be condemned when by every fair and reasonable interpretation and construction of the same it is found to be incompatible with the plain provisions of the constitution.

With the increase of population, especially in the great cities of our country, it becomes more and more important that rapid facilities for voting and canvassing the votes shall be adopted, so far as these objects can be attained without interfering with the right of franchise, the secrecy of the ballot and the accurate counting of the votes. As these necessities have only arisen in recent years many decided cases on the question here presented cannot be expected, but so far as our attention has been called to the decisions of other courts of last resort we find them sustaining similar laws.

In 1901 the legislature of Massachusetts passed a law providing for the use of voting machines in elections. The constitutionality of that law was submitted to the Supreme Court of that State and the act sustained. (178 Mass. 605.) The constitution of Massachusetts required that representatives should be chosen by a written vote, as were also other officers. The question was whether this written vote could be cast, under the provisions of the constitution, by a voting machine. Mr. Justice Holmes, (now a member of the Supreme Court of the United States,) in delivering the opinion of the court, said: "The requirement of the consti-

tution that representatives shall be chosen by a written vote may be complied with in voting by a machine which registers each vote cast without the use of separate ballots, and the provisions for sorting and counting the votes for Governor and for Senator do not prevent the use of machines in voting and in counting the votes cast." We regard the language of the constitution of Massachusetts as more restrictive and limited than our own and much more in harmony with the contention of counsel for appellant.

In 1897 the legislature of Rhode Island passed a statute also providing for voting by machines, and the constitutionality of the act was submitted by the Governor to the Supreme Court, its decision being reported under the title *In re Voting Machines,* 19 R. I. 729. The constitution of that State, like ours, provides that the voting for certain officers therein named should be by ballot. The court said: "The primary meaning of 'ballot,' which signified a little ball, is not the one intended, but the broader meaning which has been substituted for the word by reason of the change in the mode of voting, from little balls to that of paper vote. The purpose of the constitution is evidently to provide a record more permanent than that of counting hands and the like, by which the declared result may be verified. * * * We see no reason why a choice may not be indicated as well by a puncture of the paper as by a pencil mark. The language of the constitution seems to be broad enough to cover the proposal. The purpose of the constitution is subserved and the possibility of the change of method is anticipated and provided for. The essential thing to be secured is a record of the choice of the voters, and this, we understand, will be secured by the method proposed." See, also, the recent case of *City of Detroit* v. *Board of Election District,* 102 N. W. Rep. 1029.

In view of the primary meaning of the term "ballot" and the purpose of its use as applied to elections, as well as in the light of reason and authority, we are of the opinion that

the statute in question does not contravene the provisions of the constitution and is a valid law. Nor do we see how injury or injustice can result to any voter by the adoption and practical operation of the law. Section 1 provides that no machine shall be adopted until the board of voting machine commissioners have made and certified to a report that they have examined the machine; that it enables each elector to vote a straight party ticket; that it enables each voter to vote a ticket selected in part from the nominees of one party, and in part from the nominees of any or all other parties, and in part from an independent nomination, and in part of persons in any nomination by any party or upon any independent nomination; that it enables each elector to vote a written or printed ballot of his own selection and vote for all candidates for whom he is entitled to vote, and prevents him from voting for any candidate for any office more than once; that it prevents the elector from voting for more than one person for the same office unless lawfully entitled so to do, and permits him to vote for as many persons for that office as he is entitled by law so to do; that such machine will register correctly every vote cast, and has the capacity to contain the tickets of seven political parties, with the names of all the candidates thereon, together with all propositions to be voted upon; that all votes cast on regular ballots shall be registered; that voters may, by means of irregular ballots, vote for any person for office, although such person may not have been nominated and his name may not appear on such machine, etc.

We find no error in the ruling of the superior court, and its decree will accordingly be affirmed.

*Decree affirmed.*