STATE EX REL. FENNER, RELATOR, *v.* KEATING, RESPONDENT.

(No. 3,974.)

(Submitted February 5, 1917.   Decided March 23, 1917.)

[163 Pac. 1156.]

*Elections — Voting Machine — Statute — Constitutional Law— Statutory Construction.*

Statutes—Constitutional Construction—Rule.
   1.   Where a statute is assailed as unconstitutional, the question is not whether it is possible to condemn, but whether it is possible to uphold, and it will not be declared unconstitutional unless its nullity is placed, in the court's judgment, beyond reasonable doubt.

Elections—Voting Machine Statute—Constitutionality.
   2.   *Held,* that the Act providing for the use of voting machines (Laws 1907, Chap. 168 [secs. 609–625, Rev. Codes]) is not invalid as in contravention of the provision of section 1, Article IX, Constitution of Montana, that all elections by the people shall be "by ballot," the term "ballot" being employed, not to designate a piece of paper, but a method to insure, so far as possible, the secrecy and integrity of the popular vote.
   [As to irregularities that will avoid an election, see note in 90 Am. St. Rep. 46.]

Constitutional Construction—Rule.
   3.   In interpreting a constitutional provision, the language used therein must be taken as having been designed to meet the needs of a progres-

sive society, and should not be strictly confined to its meaning as understood at the time the instrument was adopted.

Elections—Voting Machines—Statutory Construction.

4. Chapter 168, Laws 1907, requiring that voting machines shall be constructed so that they cannot be tampered with, does not require a machine which is proof against all tampering or manipulation but one which, when honestly operated, will enable an elector to secretly cast his vote as he wishes to cast it and have it counted as cast, and which cannot be tampered with or manipulated in such a way that, though properly operated by the elector, it would seem to receive and record his vote without doing so.

Original action in *quo warranto* by the State of Montana, on the relation of William D. Fenner, against William Keating. Demurrer to complaint sustained and proceeding dismissed.

*Messrs. Maury & Wheeler, Mr. Edward Horsky* and *Mr. James M. Hinkle,* for Relator, submitted a brief; *Mr. H. L. Maury* argued the cause orally.

The following questions are involved in this case: 1. Is the machine vote a vote by ballot as contemplated by the Constitution? 2. Does the machine register the intention of the voter? 3. Does the voter know that the machine registers his vote as intended? 4. Even if we were relying solely on the statute, is it such a machine as is contemplated by the statute? All of these questions are raised by our complaint. We say in substance in the complaint that the statute and use of the machine is in violation of the Constitution, and that it is in violation of the statute as well, so that in either view of the case, whether it is considered under the provisions of the Constitution or under the provisions of the statute, we earnestly contend that the use of the machines at said election was invalid and the votes so attempted to be cast on the machine are illegal.

A Constitution must be interpreted in the light of the circumstances existing at the time of the adoption of the Constitution. (*State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589.) We therefore insist that no definition by any court of a ballot of a later date than October 1, 1889, is of any persuasive force at all upon the court. Furthermore, "The province of the judiciary is not to make the law but to construe it. The meaning of a constitutional provision being plain it must stand, be

recognized and obeyed, as the supreme law of the land." (*People* v. *May,* 9 Colo. 80, 10 Pac. 641,) With reference to the argument of hardship, resulting from giving effect to the plain terms of the Constitution, this court has answered such contention in the case of *Palmer* v. *City of Helena,* 19 Mont. 61, at p. 68, 47 Pac. 209. (See, also, *State* v. *City of Helena,* 24 Mont. 521, at p. 537, 81 Am. St. Rep. 453, 55 L. R. A. 336, 63 Pac. 99.)

What was the meaning of the word "ballot" in Montana on October 1, 1889? Many of our laws, institutions and customs in Montana came from California. The constitutional provision in point here is found in the California Constitution of 1849. It is found in the Constitution of 1879. It was not amended in any way until 1896. Then there was added, "or by such other method as may be provided by law, providing that secrecy in voting be preserved." It was thought that this would permit the use of voting machines, but the advocates of this method were then faced with another constitutional provision preventing local authorities from discriminating against classes of electors in the manner of exercising the franchise. (*Eaton* v. *Brown,* 96 Cal. 371, 31 Am. St. Rep. 225, 17 L. R. A. 697, 31 Pac. 250; *Sanner* v. *Patton,* 155 Ill. 553, 40 N. E. 290.) In 1902, this amendment was made: "The legislature shall have power to provide that in different parts of the state different methods may be employed for receiving and registering the will of the people as expressed at elections, and may provide that mechanical devices may be used within designated subdivisions of the state at the option of the local authority indicated by the legislature for that purpose." (Treadwell, Cal. Const., 78.)

Another reason why it was necessary to so amend their basic law before using machines at elections was that the legislature had established the meaning of the word "ballot" in that state and had given it essentially the same definition as that established by our territorial legislature and in existence for many years before October 1, 1889, and March 13, 1889. (*People* v. *Holden,* 28 Cal. 124.)

Secret balloting is not constitutional as to its origin, but statutory. Ballots may be used secretly or openly; they are none the less ballots when used openly than if used with the greatest privacy of the electors.

We find the word "ballot" used in the Twelfth Amendment of the Constitution of the United States without any reference to secrecy. We find substantially the same constitutional provision as ours in the Constitution of Delaware in 1831; of California, 1849; of Nevada, 1864; of Ohio, 1851. On page 926, section 1018; Compiled Statutes of 1887, we find the following: "A ballot or piece of paper on which shall be written or printed the names of the persons voted for, open or folded as the voter may choose." For the convenience of the court we array what we contend are the relevant and persuasive definitions of a ballot and as such definition existed on October 1, 1889, and perhaps subsequent. (Cooley's Constitutional Limitations, 7th ed., p. 910; *Brisbin* v. *Cleary*, 26 Minn. 107, 1 N. W. 825; *State* v. *Anderson*, 100 Wis. 523, 42 L. R. A. 239, 76 N. W. 482; *Daniel* v. *Simms*, 49 W. Va. 554, 39 S. E. 690; *State* v. *Timothy*, 147 Mo. 532, 49 S. W. 499; *Taylor* v. *Bleakley*, 55 Kan. 1, 49 Am. St. Rep. 233, 28 L. R. A. 683, 39 Pac. 1045; *Williams* v. *Stein*, 38 Ind. 89, 10 Am. Rep. 97; *People* v. *Holden*, 28 Cal. 123; Shannon's Code, Tennessee, 1, 896, par. 1265.)

A ticket is not a ballot until properly voted, and registers the intention of the voter, and if it cannot be determined by the vote whether it registered as intended, then it is not a ballot.

*Mr. E. G. Toomey* and *Messrs. Galen & Mettler,* for Respondent, submitted a brief; *Mr. A. J. Galen* and *Mr. Toomey* argued the cause orally.

The court will sustain the constitutionality of a law unless it appears beyond a reasonable doubt to be unconstitutional. (*In re O'Brien*, 29 Mont. 530, 1 Ann. Cas. 373, 75 Pac. 196; *Northwestern Mut. Ins. Co.* v. *Lewis & Clark County*, 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982; *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516;

*Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093; *Spratt* v. *Helena Power Transmission Co.,* 37 Mont. 60, 94 Pac. 631; *State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095; *Sweet* v. *Rechel,* 159 U. S. 380, 392, 393, 40 L. Ed. 188, 16 Sup. Ct. Rep. 43.) "That one entitled to vote shall not be deprived of the privilege by the action of the authorities is a fundamental principle." (Cooley's Constitutional Limitations, 7th ed., 926.)

Giving the rule of contemporaneous construction the dominant force claimed for it by relator, respondent insists that its application produces clear and convincing evidence that our constitutional provisions, "All elections by the people shall be by ballot," "All elections shall be free and open and no power, civil or military, shall at any time interfere or prevent the free exercises of the right of suffrage," and "The legislative assembly shall have the power to pass a registration and such other laws as may be necessary to secure the purity of elections and guard against abuses of the elective franchise," were adopted under circumstances and under a popular conception of the term "ballot" that leave no room to doubt that the framers of the Constitution intended to secure thereby a secret system of voting. (*State* v. *Hogan,* 24 Mont. 383, 62 Pac. 583.)

The inevitable conclusion from the authorities below is that the word "ballot" as used in Montana and elsewhere means any instrument that permits the casting of a secret vote, and that this is the only test that courts have ever seen fit to apply. (*State* v. *Anderson,* 26 Fla. 240, 8 South. 1; *Ex parte Arnold,* 128 Mo. 256, 49 Am. St. Rep. 557, 33 L. R. A. 386, 30 S. W. 768, 1036; *Williams* v. *Stein,* 38 Ind. 89, 10 Am. Rep. 97; *Ritchie* v. *Richards,* 14 Utah, 345, 47 Pac. 670; *Brisbin* v. *Cleary,* 26 Minn. 107, 1 N. W. 825; *Opinion of Judges,* 7 Me. 495; *Temple* v. *Mead,* 4 Vt. 535; *People* v. *Cicott,* 16 Mich. 297; *Attorney General* v. *Detroit Com. Council,* 58 Mich. 213, 217, 55 Am. Rep. 675, 24 N. W. 887; *People* v. *Pease,* 27 N. Y. 45, 84 Am. Dec. 242.)

Constitutional requirements of various states and decisions of courts: A requirement identical with, or similar to section 1,

Article IX, of our Constitution exists in the Constitutions of nearly all of the states of the United States, and in over twenty of these states voting machine laws have been enacted.    Eight states in which this requirement exists have passed upon the constitutionality of the voting machine law and of the machines used in pursuance thereof, and in seven of these cases the constitutionality of the law and the use of the machines has been affirmed.    Another state (Massachusetts), under a constitutional provision requiring a *"written vote,"* has denied the validity of its voting machine statute.    In each case the court has decided that the use of the voting machine, under the voting machine law of the state in question, complied with the requirement that all elections should be by ballot.    The cases in which this question has been specifically passed upon, in favor of the validity of such Acts, are as follows: *In re McTammany Voting Machine,* 19 R. I. 729, 36 L. R. A. 547, 36 Atl. 716; *City of Detroit* v. *Board of Inspectors of Election,* 139 Mich. 548, 111 Am. St. Rep. 430, 5 Ann. Cas. 861, 69 L. R. A. 184, 102 N. W. 1029; *Lynch* v. *Malley,* 215 Ill. 574, 2 Ann. Cas. 837, 74 N. E. 723; *U. S. Standard Voting Machine Co.* v. *Hobson,* 132 Iowa, 38, 119 Am. St. Rep. 539, 10 Ann. Cas. 972, 7 L. R. A. (n. s.) 512, 109 N. W. 458; *Elwell* v. *Comstock,* 99 Minn. 261, 9 Ann. Cas. 270, 7 L. R. A. (n. s.) 621, 109 N. W. 113, 698; *Spickerman* v. *Goddard,* 182 Ind. 523, L. R. A. 1915C, 513, 107 N. E. 2; *State ex rel. Empire Voting Machine Co.* v. *Carroll,* 78 Wash. 83, 138 Pac. 306; *Henderson* v. *Board of Election Commrs.,* 160 Mich. 36, 124 N. W. 1105; *Helme* v. *Board of Election Commrs.,* 149 Mich. 390, 119 Am. St. Rep. 681, 12 Ann. Cas. 473, 113 N. W. 6.    *Contra:* State *ex rel. Karlinger* v. *Board of Deputy State Supervisors of Elections,* 80 Ohio St. 471, 24 L. R. A. (n. s.) 188, 89 N. E. 33 (by a divided court); *Nichols* v. *Board of Election Commrs.,* 196 Mass. 410, 124 Am. St. Rep. 568, 12 L. R. A. (n. s.) 280, 82 N. E. 50.

## Opinion—PER CURIAM.

Original action in *quo warranto* by the relator to have determined his title to the office of state auditor.    The relator and

the respondent, both eligible to hold the office, were respectively the duly nominated candidates of the Republican and Democratic parties to be voted for at the election held on November 7, 1916. There was also a candidate of the Socialist party, but the vote cast for him was so relatively small that reference to it may be omitted. The basis of the relator's claim as set out in his complaint may be stated, in substance, as follows: According to the returns as finally canvassed, the relator received throughout the state 73,184 votes, and the respondent received 73,845 votes— an apparent majority for .the respondent of 661. Among the votes so cast and counted are those cast by means of voting machines in twenty-eight of the sixty-eight precincts of Silver Bow county, whereof the relator received 3,690 and the respondent 5,125, all of which should be rejected as illegal because not cast by ballot as required by section 1, Article IX, of the Constitution, and because the machines, if their use can be constitutionally proper, do not comply with the statute which assumes to authorize them. These votes eliminated, a majority for the relator of 774 is disclosed, thus vesting title to the office in him.

1. The first contention is that, since the section of the Constitution *supra* requires "all elections by the people shall be by ballot," every vote cast at an election must be by means of a piece of paper on which are printed or written the names of the persons voted for, with a proper designation of the office each is intended to fill, delivered to the judges of election; in other words, adopting the definition of the term "ballot" by the supreme court of Ohio, it means: "A printed or written expression of the voter's choice upon some material capable of receiving and reasonably retaining it, prepared or adopted by each individual voter and passing by the act of voting from his exclusive control into that of the election officers, to be by them accepted as the expression of his choice." (*State ex rel. Karlinger* v. *Board of Deputy State Supervisors of Elections,* 80 Ohio St. 471, 24 L. R. A. (n. s.) 188, 89 N. E. 33.) This definition, if accepted as correct, would preclude any further discussion; but an acceptance of it involves the rejection, as invalid, of the

Act of the legislature authorizing the use of voting machines,
[1]   and we must repeat that, in the case of statutes passed
by the legislative assembly and assailed as unconstitutional,
the question is not whether it is possible to condemn, but
whether it is possible to uphold. We stand committed to the
rule that a statute will not be declared unconstitutional unless
its nullity is placed, in our judgment, beyond reasonable doubt.
(*State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B,
39, 142 Pac. 210.)   Several considerations compel the view that
the statute can and should be upheld.

In the first place, the term "ballot" has a most interesting
[2]   history, into which we need not enter further than to say
that, from its origin as descriptive of voting by means of balls
put into an urn, its primary significance has always been a
method whereby the voter might cast his vote in secret, as dis-
tinguished from a showing of hands or *viva voce* wherein secrecy
is impossible.   (See Ency. Britannica, under article "Ballot,
Voting, Voting Machines"; also, cases cited below.)   The view
that permanent recordation of the elector's choice on paper or
anything else is an essential part of the process of voting by
ballot finds no justification in etymology and scarcely any in the
course of legislation having to do with the subject in this and
other countries where such voting has obtained.   But it is in-
sisted that in Montana the matter was set at rest by the pro-
visions of section 1018, page 926, Compiled Statutes of 1887, as
follows: "Every elector shall deliver, in full view of one of the
judges of election, a single ballot or piece of paper, on which
shall be written or printed the names of the persons voted for,
with a pertinent designation of the office which he or they may
be intended to fill; said ballots may be open or folded, as the
voter may choose."   The argument is that these provisions fix
the meaning of "elections by ballot" as used in the Constitu-
tion and established beyond peradventure that paper is, and
secrecy is not, a vital part of that meaning.   The fact is that,
when the convention met, the section quoted was not in force,
having been superseded by the Australian Ballot Law (Session

Laws 1889, p. 145), under which secrecy became compulsory;
but the point about secrecy as an element of voting by ballot
is not so much that it be compulsory as that it be possible, and
therein lies a distinction between voting by ballot and voting
by the Australian method.   Conceding, however, that by the
section quoted and by the Australian Ballot Law as in force
when the convention met, and by the course of legislation up to
the enactment of the voting machine law, the idea of voting by
ballot had its exposition in this community only in the form with
which we are most familiar, and that it implied pieces of paper
on which the voter should record his choice from among the
names of the candidates written or printed thereon, it does not
follow that this is a contemporaneous construction, absolutely
defining the scope of the constitutional language.   These enact-
ments amount to nothing more than a legislative selection of one
of the modes in which voting by ballot may be conducted, which
mode for the time being should be followed.   (*Lynch* v. *Malley,*
215 Ill. 574, 2 Ann. Cas. 837, 74 N. E. 723.)   It cannot for a
moment be supposed that the framers of our Constitution, or the
people who adopted it and to whom was available the knowl-
edge of the many changes in form through which voting by
ballot had gone, intended then and there to put a stop to all
progress in that direction, or to say that the method most
familiar to them was the only one that could answer to the con-
stitutional language.   Indeed, the contrary must be assumed if
we impute to them a fair average of human intelligence and
curiosity; for it is certain that before that time devices for the
secret automatic casting and counting of votes, free from the
delay and frauds incident to the methods then in vogue, were
being sought and at that time the voting machine, essentially
as we know it, was an actuality.   (Wigmore on Australian Bal-
lot, p. 201.)

Again, we may assume, for argument's sake, that such a thing
[3]   as the voting machine, or any other form of balloting save
with pieces of paper, did not enter the minds of those who
framed or those who adopted the Constitution; still the proper

interpretation of any constitutional provision requires us to remember that it is a part of the organic law—organic not only in the sense that it is fundamental, but also in the sense that it is a living thing designed to meet the needs of a progressive society, amid all the detail changes to which a progressive society is subject. "We are to suppose," as said by Chief Justice Parker, "that those who were delegated to the great business of distributing the powers which emanated from the sovereignty of the people, and to the establishment of rules for the perpetual security of the rights of person and property, had the wisdom to adapt their language to future as well as existing emergencies; so that words competent to the then existing state of the community, and at the same time capable of being expanded to embrace more extensive relations, should not be restrained to their more obvious and immediate sense, if, consistently with the general object of the authors and the true principles of the compact, they can be extended to other relations and circumstances which an improved state of society may produce." (*Henshaw v. Foster,* 9 Pick. (26 Mass.) 312.) A familiar application of this canon is seen in the history of the post roads provision of our national Constitution. This provision was promulgated when post roads were confined to waterways and to land routes traversed only by people afoot or on horseback or in vehicles drawn by domestic animals; specially constructed ways for steam and electric traction could not have been in contemplation; yet it is settled to the satisfaction of everyone that such specially constructed ways can and do fall within the purview of this provision. So here, the provision that elections should be by ballot was employed not to designate pieces of paper, but a method which would insure, so far as possible, the secrecy and the integrity of the popular vote. The voting machine, if capable of accomplishing what is claimed for it, is a distinct step in advance of the prevailing method toward securing what the provision in question demands; and it will overcome in a striking degree many of the evils now said to surround the conduct of elections. If by its use the main purpose of the Constitution

is furthered and the elector may cast his vote in secret with the assurance that it will be counted as cast, there can be no sound reason why the method should be dismissed as an innovation upon the letter of the law.

Finally, the definition and conclusion of the Ohio court are contrary to the weight of judicial authority. In not less than six states on not less than eight different occasions this precise question has been submitted for adjudication, and the use of voting machines has been upheld as in conformity with constitutional provisions similar to our own. (*United States Voting Machine Co.* v. *Hobson*, 132 Iowa, 38, 119 Am. St. Rep. 539, 10 Ann. Cas. 972, 7 L. R. A. (n. s.) 512, 109 N. W. 458; *Elwell* v. *Comstock*, 99 Minn. 261, 9 Ann. Cas. 270, 7 L. R. A. (n. s.) 621, 109 N. W. 113, 698; *Henderson* v. *Board of Election Commrs.*, 160 Mich. 36, 124 N. W. 1105; *Lynch* v. *Malley, supra; In re McTammany Voting Machine Co.*, 19 R. I. 729, 36 L. R. A. 547, 36 Atl. 716; *Detroit* v. *Board of Inspectors etc.*, 139 Mich. 548, 111 Am. St. Rep. 430, 5 Ann. Cas. 861, 69 L. R. A. 184, 102 N. W. 1029; *State ex rel. Empire Voting Machine Co.* v. *Carroll*, 78 Wash. 83, 138 Pac. 306; *Helme* v. *Board of Election Commrs.*, 149 Mich. 390, 119 Am. St. Rep. 681, 12 Ann. Cas. 473, 113 N. W. 6.)

2. The claim that the voting machines used in Silver Bow [4] county do not comply with the law which authorizes their use is based upon a provision in section 2 of the Act (Session Laws 1907, Chap. 168) that "the machine must be constructed so that it cannot be tampered with or manipulated for any fraudulent purpose," coupled with certain allegations of the complaint to the effect that said machines can be so tampered with. The provision quoted is to be read in connection with the balance, and particularly sections 14 and 15 of the Act; so read, it becomes obvious that the Act does not require a machine which is proof against all tampering or manipulation—no human contrivance can possess this immunity—but does require a machine which shall possess certain features which, when it is honestly operated, will enable the elector to secretly cast his vote

as he wishes to cast it and have it counted as cast, and which cannot be tampered with or manipulated in such a way that, though properly operated by the elector, it would seem to receive and record his vote without doing so. There are no allegations in the complaint to justify the inference that the voting machines in question are thus defective, or that they have ever failed to accurately receive and record the votes attempted to be cast by their means, or that the relator has through their use lost any votes intended to be cast for him. We are therefore of the opinion that no issue is presented in this behalf.

The demurrer to the complaint is sustained, and as the cause was argued and submitted on the theory that no questions other than those presented by the complaint as filed, and the demurrer thereto, could be raised, it is now adjudged that the proceeding be dismissed and the respondent confirmed in his office.

*Dismissed.*

(Submitted February 5, 1917.    Decided March 23, 1917.)