Woodard *v.* Brien.

JOHN WOODARD, Adm'r, *v.* M. M. BRIEN *et al.*

CONSTITUTIONAL LAW. *Partial legislation.* Chapter 120 of the acts of
1877, providing that it shall apply " only to counties that had a pop-
ulation by the *census of* 1870, of not less than forty thousand," is un-
constitutional—there being but two counties in Tennessee having that
population—because it is a suspension of the general law for the
benefit of the two counties, and because it is impossible for other
counties, which have subsequently acquired a population of 40,000,
to bring themselves within the terms of the statute.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A.
G. MERRITT, Ch.

SMITH & ALLISON for complainant.

M. M. BRIEN, A. J. CARTWRIGHT and J. W.
JUDD for defendants.

COOKE, J., delivered the opinion of the court.

On September 25, 1877, complainant's intestate re-
covered two judgments in the circuit court of David-
son county against respondents, M. M. Brien and W.
B. Thaxton. At the time of the rendition of these
judgments, M. M. Brien was a citizen of Davidson
county, and was the owner of two tracts of land in
said county. On October 22, 1877, respondent, M. M.
Brien, conveyed one of said tracts of land to his
daughter and son-in-law, Mary A. and S. B. Hopkins,
and the other to his son, R. C. Brien, and said deeds.

were duly registered. On September 5, 1878, within less than one year from the rendition of said judgments, executions were issued, and levied upon said lands as the property of M. M. Brien, which were sold by the sheriff, and purchased by the complainant within the year, and sheriff's deeds executed to him for the same, dated September 30, 1878. This bill was filed to assert title to said lands under said sheriff's deeds, and also attacking said conveyance by M. M. Brien to Hopkins and wife and R. C. Brien, as voluntary and fraudulent and void as against creditors, etc..

There was a cross-bill by Hopkins and wife, seeking to have said sheriff's deeds removed as a cloud upon their title.

The chancellor rendered a decree in favor of the complainant in the original bill, and dismissing the cross-bill, and the respondents, Hopkins and wife, appealed.

The Referees have recommended an affirmance of the chancellor's decree. One exception has been filed, which is as follows: "Because said report recommends that the act of 1877, chap. 120, entitled, "An act to regulate the lien acquired by judgments, decrees, etc., be declared unconstitution, as being in violation of the Constitution, Article XI., sec. 8, and as applying only to counties having a population of 40,000," with reference to authorities relied upon to sustain the exception. The only question, therefore, raised by the report, and this exception, although others have been argued, is as to the constitutionality of said act, the first section of which is as follows: "That the title

to real estate shall not be in any manner affected as to third parties by any lien acquired by any judgment, decree, bill in equity, judicial attachment, *lis pendens,* levy of attachment, or levy of execution, without actual notice thereof, till an abstract of such proceeding shall have been filed for record in the register's office of the county where the land lies. Such abstract shall be recorded in a book, to be kept in said office, to be called the Judgment Roll," etc.  *  By section 5 it is enacted that "the provisions of this act shall only apply to counties that had, by the census of 1870, a population of not less than forty thousand.

It is conceded that the provisions of this act can only apply to the counties of Davidson and Shelby, they being the only two counties in the State that had by the census of 1870 a population of 40,000. The general law is as follows—by Code, sec. 2980: "Judgments and decrees obtained in any court of record of this State in the county where the debtor resides at the time of rendition, shall be a lien upon the debtor's land from the time the same were rendered." And by section 2982: "The lien thus given will be lost unless an execution is taken out and the land sold within twelve months after the rendition of the judgment or decree."

By Article XI., section 8, of the Constitution, it is provided that the Legislature shall have no power to suspend any law. for the benefit of any particular individual, nor to ·pass any law for the benefit of individuals inconsistent with the general laws of the

land, nor to pass any law granting to any individ-
ual or individuals, rights, privileges, immunities or
exemptions other than such as may be, by the same
law, extended to any member of the community who
may be able to bring himself within the provisions of
such law.

The act in question is so clearly a suspensión of
the general law for the benefit of the two counties
mentioned as to require no argument to establish
the proposition. "The Legislature may suspend the
operation of the general laws of the State; but when
it does so the suspension must be general, and can-
not be made for individual cases or for particular
localities": Cooley's Const. Lim., p. 490. The stat-
ute of limitations cannot be suspended in particular
cases, while allowed to remain in force generally. The
general exemption laws cannot be varied for particu-
lar cases or localities: *Ibid*, note 2, and cases cited.
A law of the land is a rule embracing and affecting
all persons in general, or all persons who exist or
may come into a like state and circumstances, while
a partial law embraces only a portion of those per-
sons who exist in the same state and are surrounded
by like circumstances: 3 Hum., 190; 2 Sneed, 121.
By the general law a judgment rendered against a cit-
zen of any county of the State by a court of re-
cord is a lien upon his land in that county for
twelve months from the rendition of the judgment,
and whoever purchases it during that time takes it
subject to that lien. But by the express terms of
the act in question a judgment rendered against a

citizen of any county having by the census of 1870
a population of 40,000, which, as before stated, can
only mean a citizen of Davidson or Shelby county,
shall not be a lien upon his land affecting third per-
sons, without actual notice, unless an abstract of the
same ·is registered, as prescribed by 'said act, thus giv-
ing an immunity from the operations of the general
laws affecting the rights of property to citizens . of
those two counties that cannot be enjoyed by any of.
the citizens of any of the other counties of the State.
And it is by the very terms of the act utterly im-
possible for them ever to bring themselves within its
provisions, for its operation is restricted to those coun-
ties that had a population of not less than 40,000
by the census of 1870.    Hence, although other coun-
ties of the State may have acquired since that census,
and might now possess that amount of population, or
double that amount, they cannot come within its pro-
visions because they did not have that amount of
population by the census of 1870.

It is insisted, however, that the provisions of this
act come within the principle decided in the case of
*Rauscher* v. *The State*, 1 Lea, 96, in which the act
of 1877, ch. 35, commonly known as the four-mile
law, was held to be constitutional.    This is a mis-
apprehension.    That was a mere police regulation,
affecting incorporated towns and cities in this State,
which are governing agencies, and applied alike to all
the incorporated towns and cities in the State.    But
when, by the act of 1883, it was attempted to amend said
act by excepting a certain class of municipal corpo-

rations, known as taxing districts of the second class, from its operation, said last mentioned act was, by this court, in the case of *Hatcher & Lee* v. *The State,* 12 Lea, 368, declared to be unconstitutional and void, because a partial law and not applicable to all in like circumstances.

The act in question, we think, too clearly obnoxious to the provision of the Constitution above cited, and within the principle decided in the case last referred to, to require further discussion.

The exceptions to the report are overruled, and the decree of the chancellor affirmed with costs.