## IN RE VOTING MACHINE.

The General Assembly may enact a valid law authorizing a municipality to use the McTammany Voting Machine in elections held therein, assuming that provision will be made to accommodate voters who may wish to vote for persons other than those named on the official ballot.

A record of the choice of the voters may be indicated as well by the puncture of a paper as by a pencil mark thereon.

A law is not unconstitutional if it be reasonably within the terms of the constitution.

The opinions of those who frame a constitution, or law, cannot be taken as its true construction unless the language used is capable of such construction. It is the language used that must prevail.

In response to a communication from the Governor the judges of the Supreme Court gave the following opinion February 2, 1897.

*To His Excellency Charles Warren Lippitt, Governor, &c.*:

We have received from Your Excellency the following question : "Can the General Assembly of Rhode Island, under our constitution, enact a valid law providing that the city of Providence may use the McTammany Voting Machine, so-called, in elections held in said city?" which we have the honor to answer in the affirmative. In doing so we are not, of course, to be understood to say that the framers of the constitution, as individuals, had in mind such a method of voting as that to which you refer, for that would be obviously improbable. The question, however, is not what limitations they may have had in mind by reason of the methods to which they were accustomed, but what the language of the constitution means, or may reasonably mean, with reference to the matter before us. The opinions of the men who frame a constitution or law cannot be taken as its true construction unless the language used is capable of such construction ; and so, on the other hand, a law is not unconstitutional if it is reasonably within the terms of the constitution. See *State* v. *District of Narragansett,* 16 R. I. 424. The language used may be broader than individual conceptions at the time, and often is, but it is the language used which must prevail.

The constitution says, in article 8, section 2, after providing that the voting for general officers shall be by ballot, "and in all cases where an election is made by ballot or paper vote, the manner of balloting shall be the same as is now required in voting for general officers, until otherwise

prescribed by law." In this clause the meaning of the word "ballot" is explained by the words "paper vote." The primary meaning of "ballot," which signified a little ball, is not the one intended, but the broader meaning which has been substituted for the word by reason of the change in the mode of voting from little balls to that of a paper vote. The purpose of the constitution is evidently to provide a record more permanent than that of counting hands and the like, by which the declared result may be verified. That the manner of securing this might be changed is evident from the use of the phrase "until otherwise provided by law." We think, therefore, that the present proposal is within the terms and purpose of the constitution. It is a *paper vote*, on which the names of the candidates are printed, and from which the result may afterwards be ascertained by counting as well as in the case of individual slips of paper. The vote of a particular person may not be identified, but that cannot be done under the present system. We see no reason why a choice may not be indicated as well by a puncture of the paper as by a pencil mark. The language of the constitution seems to be broad enough to cover the proposal, the purpose of the constitution is subserved, and the possibility of a change of method is anticipated and provided for. The essential thing to be secured is a record of the choice of the voters, and this we understand will be secured by the method proposed. In this opinion we assume that provision will be made for votes for persons other than those whose names are on an official ballot, in case a voter so desires. Owing to the illness of Judge Wilbur we have been unable to confer with him.

CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
WM. W. DOUGLAS.

On the same date His Honor Mr. Justice Rogers filed the following separate opinion.

*To His Excellency Charles Warren Lippitt, Governor, &c.:*

To your inquiry—"Can the General Assembly of Rhode Island, under our constitution, enact a valid law providing that the city of Providence may use the McTammany voting machine, so called, in elections held in said city?" my reply is that in my opinion it cannot. The inquiry is not broad enough to apply *to any* machine for use in voting, nor to any modification of the McTammany voting machine that I can conceive could without great difficulty be made, but to a specific machine which has been exhibited to the judges as a sample of the machine to which the question is limited.

The Constitution of R. I. Art. VIII, Sec. 2, is as follows: "The voting for governor, lieutenant-governor, secretary of state, attorney general, general treasurer and representatives to congress, shall be by ballot; senators and representatives to the general assembly, and town or city officers, shall be chosen by ballot, on demand of any seven persons entitled to vote for the same; and in all cases where an election is made by ballot or paper vote, the manner of balloting shall be the same as is now required in voting for general officers, until otherwise prescribed by law." The constitutional form of voting, then, is "by ballot or paper vote;" and if the McTammany voting machine method of voting is by ballot or paper vote within the intendment of the provision of the constitution just quoted, then it would be a constitutional form of voting, for when words are used ambiguously or not in a perfectly obvious sense, the great object of the maxims of interpretation is to discover the true intention of the law, whether it be statute or constitutional law. Bac. Abr. Statute 1, §§ 5, 10; *In re State House Commissioners*, 19 R. I. 326; 1 Story on the Constitution, §§ 402, 405.

Sutherland, in his work on Statutory Construction, § 300, says: "It is needful in the construction of all instruments to read them in view of all the surrounding facts. To understand their purport and intended application, one should, as far as possible, be placed in a situation to see the subject from the maker's standpoint and study his language with that outlook."

What significance, then, did the framers of the constitution attach to the words "ballot or paper vote" when used in the constitutional provision above quoted? The generic kind of voting was to be by ballot or paper vote, and the particular manner of using that generic kind was by the framers of the constitution fixed for the time being, as we have seen by the provision above quoted, in the same way as then in force; but the General Assembly was authorized to change the *manner* from time to time as it saw fit, but *not* the *generic kind*, which must continue to be by ballot or paper vote.

By referring to Pub. Laws R. I., Rev. of 1822, p. 96, § 15, and p. 95, § 14, one finds both the kind and the manner of voting for certain officers in force at the time of the framing of the constitution are thus clearly laid down : "Every person who shall vote for general officers shall have his name written at length on the back of his vote at the time of delivering in the same, and the names of all the officers voted for shall be put on one single piece of paper," and "the freemen shall, one by one, in their own proper persons deliver their votes to the moderator," &c.[1] Subsequently the requirement of having the voter's name written on the back of the ballot was abolished by the General Assembly, and still later the Assembly adopted the present or Australian manner of voting, where a large number of names was on the ballot and the voter designated the persons voted for by a distinguishing cross. These changes were clearly in the *manner* merely of voting by ballot or paper vote.

It is claimed that using the McTammany voting machine is also a change in *manner* of voting by ballot or paper vote only, and not in the generic kind, because it is urged that there is a roll of paper,—invisible to the voter to be sure, but

---

[1] Although the act regulating the method of electing officers in this State, above referred to, was revised by the General Assembly at its January Session, 1836, (R. I. Acts & Res. Jan. 1836, p. 3), yet the words, quoted above, of secs. 14 and 15 of the act of 1822 were reproduced and continued in force in and by secs. 23 and 24 of the revised act of 1836.

still *there*—and that a pressure of the buttons cuts holes in that paper which records the voter's vote. It is said that though the voter does not see the paper on which his vote is recorded, yet that a blind man cannot see the paper ballot now in use and that he has to have the assistance of some one else's senses to enable him to vote. The blind man certainly has the ballot in his hands and has sensible knowledge of its presence. But even if a man in the full possession of all his senses must depend upon some one else for knowledge that there is a paper used, on whose senses does he depend for knowledge that he has made a distinguishing mark by perforation ? The voter himself does not see it made, nor does any other living person see it. Even if the voter could stand at the back of the machine with the doors open he could not see the hole he was supposed to have made, until at least one other person, if not two, had voted so as to uncover his hole by the passage of so much paper as was required for the vote of one or two persons. It seems to me that for a person to vote by ballot or paper vote, he must have some sensible evidence, some knowledge by means of his senses, that he has performed some effectual act by means of paper to indicate for whom he has voted. After he has pushed the buttons, he cannot affirm, much less swear, that he has made any mark, perforation or other distinguishing character on, or by means of paper to indicate the persons voted for. Nor can any one else give him that assurance by any sensible knowledge. The most that can be affirmed is that *if* the machine has worked as intended, he has made a distinguishing mark or hole. It is common knowledge that human machines and mechanisms get out of order and fail to work in all sorts of unforeseen ways. Ordinarily the person using a machine can see a result. Thus a bank clerk, perforating a check with figures, sees the holes ; an officer of the law, using a gibbet by pressing a button, sees the result accomplished that he sought ; and so on *ad infinitum*. But a voter on this voting machine has no knowledge through his senses that he has accomplished a result. The most that can be said, is, *if* the machine worked as intended, then he

has made his hole and voted.    It does not seem to me that that is enough.

For the reasons above set forth it does not seem to me that voting by the McTammany voting machine, as at present constructed, is voting by ballot or paper vote within the intendment of the constitution, and therefore I answer your question in the negative.

HORATIO ROGERS.