J. S. Pettit *v.* White County *et al.*

(*Nashville.* December Term, 1925.)

1. **ANIMALS.** Stock law held unconstitutional, where large part of county was perpetually excluded from its operation (**Priv. Acts 1925, chapter 618**).

   Priv. Acts 1925, chapter 618, to prevent stock from running at large in White county, *held* unconstitutional, where a large part of county was perpetually excluded from its operation. (*Post pp.* 661, 662.)

   Acts cited and construed: Acts 1923, ch. 29; Acts 1925, ch. 618.

   Cases cited and approved: Woodard v. Brien, 82 Tenn., 520; Sutton v. State, 36 S. W., 697; Hall v. State, 137 S. W., 500.

   Case cited and distinguished: Chattanooga v. Norman, 20 S. W., 417.

2. **STATUTES.**

   Doctrine of elision cannot be applied to a material exception, without which act would not have been passed. (*Post, pp.* 662, 663.)

   Cases cited and approved: Jones v. Memphis, 47 S. W., 138; Edwards v. Davis, 244 S. W., 359.

FROM WHITE.

Appeal from the Chancery Court of White County.—
Hon. W. R. Officer, Chancellor.

Turner & Haston, for appellants.

Hill, Frater & Hill, for appellee.

Mr. Justice Chambliss delivered the opinion of the
Court.

This suit is brought under the Declaratory Judgments
Act (Acts 1923, chapter 29) to test the constitutionality
of chapter 618 of the Private Acts of 1925. This is an
act to prevent stock from running at large in White
county, designated by population, "not less than fifteen
thousand seven hundred nor more than fifteen thousand
seven hundred five, according to the federal census of
1920, or any subsequent federal census."

It is conceded that our decisions sustain stock laws ap-
plicable to specific counties upon the population basis.
However, in the cases upholding these laws it has ap-
peared, as an essential to their validity, that the way was
left open for those presently excluded under the adopted
population basis to come within its operation so as to be
onerated with its burdens and enjoy its benefits, when-
ever changes in population should bring them within
the terms of the act. *Woodard* v. *Brien,* 82 Tenn., 520;
*Sutton* v. *State,* 36 S. W., 697, 96 Tenn., 696, 33 L. R.
A., 589; *Hall* v. *State,* 137 S. W., 500, 124 Tenn., 235.

Now the act before us contains a proviso excluding
a large part of the county from its operation. It is in-
sisted that the effect of this proviso is to exclude perpet-
ually the lands of those within the excepted section of the
county from the benefits of the no fence provisions; that,

while other counties of the state might hereafter come within the act, this particular section would always remain without. In harmony with the theory of the population classification basis rule, it may be theoretically conceived that in time every county of the State might come within the operation of this act, but this excepted section of White county, lying east and north of Calf Killer river, would remain forever barred. The chancellor held the act unconstitutional, and in his holding we concur.

The case of *Chattanooga* v. *Norman*, 20 S. W., 417, 92 Tenn., 73, is relied on. The ordinance construed in that case, a police regulation, declaring the running at large of stock within the city limits a nuisance, and excepting certain territory in the city limits, was held not to be class legislation. The court said:

"It applies to everybody, exempting none from its operation, and making no distinction as to stock, either as to residence or ownership. . . . It is general in its application to all stock found running at large in the specified places within the prescribed territory, come whence and belong to whom it may. Nor can the fact that certain territory of the city does not fall within the limit prove that such territory was benefited or burdened by the non-inclusion. The ordinance simply does not affect it in fact, and cannot be held to injure or benefit it in law."

While this was true of the ordinance under consideration, it cannot be said to apply to the act before us. There is an easily discernable distinction between urban and open county conditions. Many police regulations, warranted in the one case, would be arbitrary and wholly

unreasonable in the other. Moreover, while the language employed in the ordinance and the act is somewhat similar, it is apparent that in the one case no discriminatory burdens or benefits result, while this cannot be said of the other. The necessary effect of this act is to require fences to be maintained in approximately one-half of White county, while the owners of land within the other half of the county are relieved of this burden. The raising of stock constitutes an important element of the productiveness of lands, and all such legislation as affects such an important detail as fencing necessarily affects the value of the lands, and therefore the property rights of the landowners, and, when by legislation a line is drawn through a given territory, burdens are imposed and benefits conferred upon the one or the other of the subdivisions thus made. This is not appreciably true of a city ordinance regulating the running at large of stock. The classification is uniformly held to be unconstitutional, if the legislation affects individual property rights, unless it is so framed as to permit all those who are for the time being excluded by the population basis adopted to come within the operation of the law whenever the territorial population shall bring the excluded territory within its limits. As before suggested, it is obvious that the section of White county excluded by the terms of this act is permanently so excluded. The insistence that the exception may be elided and the act thus saved cannot be sustained. The doctrine of elision cannot be applied to a material exception without which it is apparent that the act would not have been passed. *Jones* v. *Memphis,* 47 S. W., 138, 101 Tenn., 188; *Edwards* v. *Davis,* 244 S. W., 359, 146 Tenn., 615, 623.

The judgment is affirmed.