MOONEY *et al. v.* PHILLIPS *et al.*

(*Nashville,* December Term, 1937.)

Opinion filed July 2, 1938.

ELKIN GARFINKLE, of Nashville, for complainants.

EDWIN F. HUNT, Assistant Attorney-General, and HORACE OSMENT, McLANE & TAYLOR, and JORDAN STOKES, JR., all of Nashville, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The bill herein was filed by two citizens and qualified voters of Davidson County against the Davidson County Board of Election Commissioners, the Davidson County Democratic Primary Election Commissioners, the Davidson County Republican Primary Election Commissioners, and several gentlemen appointed as a committee by the Davidson County Court to supervise the installation of voting machines in said county, and against Roy H. Beeler, Attorney-General.

The complainants averred that chapter 159 of the Act of 1937 permitting the use of voting machines and a certain resolution of the County Court of Davidson County passed in pursuance of that Act were unconstitutional. The defendants by appropriate pleadings denied the invalidity of the Act and of the resolution. All parties asked for a construction of certain portions of the Act if valid. The chancellor elided one section of the statute, upholding the remainder. He was of opinion that the resolution of the county court was invalid. He was of further opinion that, in view of the elision of the particular section of the statute made by him, there was no present occasion for a declaration construing the Act. All parties have appealed.

The title and first three sections of chapter 159 of the Acts of 1937 are as follows:

"An Act to permit the use of voting machines in all elections in Tennessee; to prescribe the equipment and ballots to be used and the manner of holding elections wherein such voting machines have been adopted.

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee—Specifications of Voting Machine—*That a Voting Machine to be used in Tennessee must be so constructed as to provide facilities for voting for candidates at both primary and general elections or at a nonpartisan election and also at a combination of a non-partisan and partisan primary or general election. It must permit a voter to vote for any person for any office whether or not nominated as a candidate by a party or organization. It must insure voting in absolute secrecy. It must permit a voter to vote for any candidate or on any special measure for whom or on which he is lawfully entitled to vote but none other. It must permit a voter to vote for the proper number of candidates for an office but no more. It must prevent the voter from voting for the same person twice. It must be provided with a lock or locks by which immediately after the polls are closed any movement of the voting or registering mechanism can be absolutely prevented.

"Section 2. *Be it further enacted—Adoption of Voting Machines—*That the governing body of any city or town, or the quarterly county court of any county, may adopt, for use at elections, any kind of voting machine meeting with the requirements of Section 1; and upon said adoption being made, notice thereof shall be published in some paper of general circulation in the city, town or county adopting said machine; and thereupon such voting machine may be used at any or all elections

held therein or any part thereof, for voting, registering, and counting votes cast at such elections.

"Section 3. *Be it further enacted—Experimental Use of Voting Machine*—That the governing body of any city, county or town may provide for the experimental use of voting machines in one or more precincts without a formal adoption thereof; and the use of said voting machines at such election shall be as valid for all purposes as if the machines had been permanently adopted."

The Act contains thirty-two sections and such references will be hereafter made to the remaining portions of the statute as the questions presented require.

The only substantial question raised about the constitutionality of the Act as a whole is as to whether it is in violation of Section 4 of Article 4 of the Constitution providing that all elections save those made by the General Assembly "shall be by ballot."

This seems no longer an open question in the courts of the United States. The courts of all the States in which the machines have been adopted have approved their use, with the exception of the Massachusetts court, and the constitutions of all these States have a requirement like ours that popular elections shall be by ballot.

Some attempt has been made to distinguish the Massachusetts case, *Nichols* v. *Election Commissioners*, 196 Mass., 410, 82 N. E., 50, 12 L. R. A. (N. S.), 280, 124 Am. St. Rep., 568. At any rate the decision is out of line.

Statutes authorizing the use of voting machines have been held constitutional in *Lynch* v. *Malley*, 215 Ill., 574, 74 N. E., 723, 2 Ann. Cas., 837; *Spickerman* v. *Goddard*, 182 Ind., 523, 107 N. E., 2, L. R. A., 1915C, 513; *U. S. Standard Voting Machine Co.* v. *Hobson*, 132 Iowa, 38, 109 N. W., 458, 7 L. R. A. (N. S.), 512, 119 Am. St. Rep.,

539, 10 Ann. Cas., 972; *Detroit* v. *Inspectors of Election,* 139 Mich., 548, 102 N. W., 1029, 69 L. R. A., 184, 111 Am. St. Rep., 430, 5 Ann. Cas., 861; *Elwell* v. *Comstock,* 99 Minn., 261, 109 N. W., 113, 698, 7 L. R. A. (N. S.), 621, 9 Ann. Cas., 270; *People ex rel. Deister* v. *Wintermute,* 194 N. Y., 99, 86 N. E., 818; *State ex rel. Fenner* v. *Keating,* 53 Mont., 371, 163 P., 1156; *State ex rel. Automatic Registering Machine Co.* v. *Green,* 121 Ohio St., 301, 168 N. E., 131, 66 A. L. R., 849; *In re McTammany Voting Machine,* 19 R. I., 729, 36 A., 716, 36 L. R. A., 547; *State ex rel. Empire Voting Machine Co.* v. *Carroll,* 78 Wash., 83, 138 P., 306, and other cases collected in Note, 66 A. L. R., 855.

█ █ The reasoning of the cases upholding this legislation is that the prime object of constitutional provisions that voting shall be by ballot is to insure secrecy to the voter in expressing his choice as between candidates. It is reasoned that the word "ballot" is not used in a literal sense but merely by way of designating a method of conducting elections that will guarantee the secrecy and integrity of the ballot. Upon these grounds and upon these authorities we conclude that chapter 159 of the Acts of 1937 was a valid and constitutional enactment.

As appears above, section 3 of this Act of 1937 authorizes the governing body of any county to provide for the experimental use of voting machines in one or more precincts without a formal adoption thereof. In accordance with this authority the County Court of Davidson County passed a resolution directing the use of these machines in certain precincts of the county. The chancellor thought this section of the Act invalid and elided it. This, of course, removed all support from the resolution of the county court and it fell.

404

■ The argument against the validity of section 3 is based on the premise that the Legislature itself could not have provided for different methods of voting in different districts of the same county and that the Legislature could therefore delegate no such authority to the county court. The stock law cases, *Daniel* v. *Larsen,* 157 Tenn., 690, 12 S. W. (2d), 386, and *Pettit* v. *White County,* 152 Tenn., 660, 280 S. W., 688, are cited for this.

The authority of the Legislature to provide different methods of exercising the elective franchise in different portions of the same county has been too long recognized in this State to be questioned now. Prior to chapter 117 of the Acts of 1921 extending it to the entire State, the Dortch ballot law not only applied to counties of designated population but to cities, towns and civil districts of designated population. Shannon's Code, section 1231 *et seq.* Voting elsewhere was by the 3x7 ballot with the offices to be filled and the names to be voted for printed on the ballot. Shannon's Code, section 1259. Registration of voters at this time is not only required in counties of a designated population but in cities, towns and civil districts of designated population. Section 1996, Code of 1932.

■ So regardless of the decisions in the stock law cases, we think the power of the Legislature itself to have enacted that voting machines be used in particular districts of certain counties must be granted. Certainly this must be granted if such designations were made on a population basis, and the county court has assigned the machines to the most populous precincts.

■ We see no particular objection to the delegation of authority to the county courts to install voting machines in precincts to be determined by the courts. There

are certain instrumentalities, the use of which is not permissible nor desirable in every locality in the State. So there are certain activities, the pursuit of which should not be everywhere sanctioned. The Constitution (Article 11, Section 9) provides "The Legislature shall have the right to vest such powers in the courts of justice, with regard to private and local affairs, as may be expedient."

Under this constitutional provision the Legislature has for years delegated to the quarterly county courts the power to establish and supervise ferries; Code, section 10235; *Guinn* v. *Eaves,* 117 Tenn., 524, 101 S. W., 1154; *Malone* v. *Williams,* 118 Tenn., 390, 432, 103 S. W., 798, 121 Am. St. Rep., 1002; to lay out and change roads; *Franklin Turnpike Co.* v. *County Court of Maury,* 27 Tenn. (8 Humph.), 342; *Hawkins* v. *Trousdale County,* 80 Tenn. (12 Lea), 351; *White's Creek Turnpike Co.* v. *Davidson County,* 82 Tenn. (14 Lea), 73; *Turnpike Co.* v. *Davidson County,* 91 Tenn., 291, 18 S. W., 626; to control bridges; *Ledbetter* v. *Turnpike Co.,* 110 Tenn., 92, 73 S. W., 117.

More recently the Legislature has given to the county courts the power, within limits, to determine the places at which beer dealers may do business. Chapter 69, Acts of 1933, sustained in *Wright* v. *State,* 171 Tenn., 628, 106 S. W. (2d), 866.

▮ It is therefore competent for the Legislature to leave the matter of the location of voting machines to the county courts just as it leaves to those bodies the matter of the location of ferries, roads, bridges and beer dealers. The local authority is of course in a better position to determine where these machines will be of most service. The Legislature has, by chapter 159 of the Acts of 1937, authorized the use of voting machines in such counties

as desire to acquire them and has merely left to the county courts the location of these authorized instrumentalities. Since the Legislature is empowered to authorize the permanent adoption of voting machines by county courts, clearly the Legislature could authorize a trial adoption of the machines or an adoption of the machines for a briefer period.

■ The court is asked in the event the Act is held constitutional to make a declaration as to whether all three of the elections to be held on August 4, 1938, the general election, the Democratic primary and Republican primary, can be held on the same machine.

We see no objection to this in view of the statements that the machines are so constructed that three elections can be held on one of them, each election independent of the other.

■ The court is also asked for a declaration as to the judges of these elections in view of the provisions of section 12 of the Act. That section provides that "In precincts where voting machines are used four election officials shall be appointed, provided that in precincts wherein two voting machines are required five election officials shall be appointed and that in precincts wherein three voting machines are required six election officials shall be appointed for each such precincts."

Section 17 of the statute provides "That one judge shall attend the voting machine, the other officers shall attend the poll books and shall perform the usual duties of election officials as provided by law."

It is apparent from the foregoing that it was the intention of the statute to have one judge attend each machine used in every precinct and three other judges to attend the poll books and perform the other usual du-

ties. Judges to officiate in the general election will be appointed by the Davidson County Election Commissioners. Code, section 1977. And judges to officiate in the two primary elections will be appointed by the two county primary boards. Each of these three authorities, under previous laws, will appoint three judges. Each of these three authorities under chapter 159 of the Acts of 1937 will appoint one additional judge to attend each voting machine. Three judges should attend each voting machine when it is used in three elections, one for each election being conducted.

 The court is also asked to declare the duty of the committee of the county court named as custodian of the machines with respect to whom said machines shall be delivered for holding the elections on August 4, 1938. The places of holding elections are fixed by the county courts. Code, section 1943 *et seq.* The legalized primary elections are held at the same places. Code, section 2181. By section 9 of the Act of 1937 it is made the duty of the custodian after the machines have been prepared for election to cause the same to be delivered at each of the polling places where they are to be used at least twelve hours before the time set for the opening of the polls. When the custodian has delivered these machines at the polling places appointed by the county court, it seems that his statutory duty respecting delivery of the machines is ended.

The chancellor's decree is affirmed with the foregoing modification and declaration.

The use of these machines being new and the statute regulating their use being quite elaborate, doubtless other questions will arise. These matters must be determined by the proper officials as they come up. Even should the

court hereafter disagree with some construction of the statute made by election officials, the court would be very slow to interfere with the result of any election honestly conducted by the use of these machines.