WALLACE *et al. v.* LEWALLEN *et al.*

(*Knoxville*, September Term, 1947.)

Opinion filed May 3, 1948.

CATES, FOWLER, LONG & FOWLER, Knoxville, Tenn., and T. R. CHADWICK, Clinton, Tenn., for complainants, Wallace, et al.

SIDNEY DAVIS, Clinton, Tenn., JOHN P. DAVIS, Tazewell, Tenn., TYREE B. HARRIS, III and JOHN J. HOOKER, both of Nashville, Tenn., for defendants, Lewallen and Stewart, Election Commissioners of Anderson County.

JAMES M. UNDERWOOD, Clinton, Tenn., for defendants and cross-complainants Underwood, County Election Commissioner, and Mayor & Aldermen of Town of Clinton.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainants, as taxpayers and resident citizens of Anderson County, filed their original injunction bill against the defendants, W. E. Lewallen, W. W. Stewart and James M. Underwood, who constitute the County Board of Election Commission, also against the Mayor and Aldermen of the town of Clinton. The relief sought was upon the following facts:

On November 4, 1947, an election was held in Anderson County under the provisions of Chapter 49, Acts of 1939,

to determine whether the sale of alcoholic beverages within said county should be legalized. Upon the face of the returns, a majority of the votes were case in the affirmative. The returns of the election showed 6538 voting "wet" and 4647 voting "dry," or a majority of 1891 favoring the legal sale of whiskey. The bill alleged gross frauds were practiced in the Fourth Civil District, commonly referred to as the "Oak Ridge District."

The validity of the election is especially assailed upon the ground that the voters in the Fourth Civil District of the county were permitted to vote after four o'clock p. m., and until seven o'clock p. m., which was in violation of the general law, and that Chapter 398 of the Private Acts of 1947, which authorized the polls to be kept open until seven o'clock p. m. was unconstitutional, the same being in violation of Article 11, Section 8, of the Constitution of Tennessee.

The prayer of the bill was that the election in the said Fourth Civil District be purged of all fraudulent ballots and that an injunction issue to restrain the County Board of Election Commissioners from canvassing the returns and certifying the result to the County Judge.

The defendants demurred to the bill upon the grounds (1) that the Chancery Court had no jurisdiction to determine an election contest and (2) that there was no authority to enjoin the Commission from performing their legal duty of canvassing and certifying the returns.

The Chancellor sustained the demurrer and dismissed the bill. Both complainants and defendants were granted an appeal.

The chief assignment of error by the complaints is that the Chancellor committed error in holding that the suit was an election contest and also in failing to enjoin the

Election Commissioners from counting the ballots and certifying the returns. These questions were fully considered in an opinion filed with the record, but not for publication, the Court being of opinion that *O'Neil* v. *Jones*, 185 Tenn. 539, 206 S. W. (2d) 782, was controlling.

The Chancellor pretermitted the question of the right of J. M. Underwood, one of the Election Commissioners, to ask for a declaratory decree as to the validity of the Private Act which is assailed in the original bill. This is assigned as error by the defendants. In this opinion we deal exclusively with the constitutionality of Chapter 398 of the Private Acts of 1947. The caption of the Act and the preamble to it read as follows:

"An Act to extend the hours for holding elections in the Fourth Civil District of Anderson County, Tennessee.

"Whereas, Anderson County, Tennessee, during and subsequent to World War II, became and is the site of atomic development and research, and

"Whereas, this aforementioned atomic development and research has resulted in an unforeseen increase in population in Anderson County, Tennessee, generally and particularly in the Fourth Civil District of Anderson County, Tennessee, wherein the area known as Oak Ridge is located; therefore . . ."

■ We think the right of J. M. Underwood, as an Election Commissioner, to seek a declaratory decree is unquestioned. His right to such a decree under Code Sec. 8845 is of vital importance to him as a guide to his official conduct in holding future elections in Anderson County.

■ The chief complaint against the validity of this Act is that it violates Article 11, Section 8, of the Constitution, which provides:

"The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals, inconsistent with the general laws of the land"; nor to grant immunities and privileges to individuals, etc.

It is insisted that under the general law provision is made for keeping the polls open until seven o'clock p. m. in towns whose population is 15,000 or more, according to the Federal census; that this Private Act grants to citizens of the Fourth Civil District "privileges and immunities" that under the general law are denied to citizens living in other civil districts.

The only privilege or immunity that is involved in the present controversy is the right of franchise. The right of the citizen to cast his ballot is common to all citizens, and the fact that one may be given the privilege of voting after four o'clock p. m. in no way affects the right of one who must cast his ballot before that time. They both exercise the same right. Nor is this right to vote after four o'clock p. m. such a privilege as falls within the foregoing constitutional inhibition.

Moreover, we think the Act is in support of free government in that it provides for the exercise of the right of franchise on the part of citizens who would otherwise be deprived of it. The clear intent of the Legislator is expressed in the preamble to the statute above quoted, to wit, that because of the "unforeseen increase in population" in the Fourth District of Anderson County, "the site of Atomic development and research," the legislation was enacted. In other words, the Legislature was aware of the fact, due to the heavy increase in population, as well as the nature of the work in "Atomic research," that many citizens in the town of Oak Ridge would be de-

prived of voting unless the time was extended to seven o'clock p. m. The right granted is upon a population basis and is not only a reasonable and special classification, but is not prejudicial to the free exercise of the franchise in other districts.

In *Mooney et al. v. Phillips et al.*, 173 Tenn. 398, 118 S. W. (2d) 224, the late Chief Justice GREEN, speaking for the Court, said: ''The Legislature has authority to provide different methods of exercising the elective franchise in different portions of the same county,'' that is, by the use of voting machines in one precinct and by ballot in another.

In *Barham* v. *Denison*,[1] the Court had under consideration Private Acts which relieved the citizens of Henderson and Hardin Counties of registering as a prerequisite to voting. These Acts were sustained. Mr. Justice COOK, who prepared the opinion for the Court, said:

''By Chapter 400, Acts of 1905, and Chapter 284, Private Acts of 1913, Henderson and Hardin Counties were reclassified and removed from the operation of Chapter 25, Acts First Extra Session 1890, and amendatory Acts. The area of Henderson County is 530 square miles, and its population by the census preceding the Act of 1905 was 16,336. The area of Hardin County is 587 square miles, and its population by the census preceding the Act of 1913 was 17,521. The Legislature considered reclassification necessary to relieve the citizens of these sparsely populated rural sections of the requirement of registration, resulting from an enlargement of the civil districts by an act redistricting the county.

''The legislature are judges of the necessity of reclassification. In passing upon the validity of statutes the

*Opinion not designated for publication.

courts do not assume that the legislature passed an invalid act. It must be considered that they weighed the constitutionality of the act, and for that reason every reasonable doubt must be resolved in favor of the action of the legislature, and the courts can not adjudge statutes invalid unless the violation of the constitution is clear and unmistakable."

Able counsel for appellants have cited a number of cases in which we dealt with a similar problem. But they are not controlling because the Private Acts there assailed and held unconstitutional clearly suspended the general law by conferring material benefits which were denied to others by the general law. Thus in *Southern* v. *Beeler*, 183 Tenn. 272, 195 S. W. (2d) 857, 862, the Act authorized a bond issue for schools with no provision for apportionment between the city and county, as required by Code, Sec. 2563. This was a material benefit to the county which was contrary to the general law.

In *McMinnville* v. *Curtis*, 183 Tenn. 442, 192 S. W. (2d) 998, the Private Act undertook to relieve citizens of the town of paying a poll tax, which was contrary to the general law under which all citizens must pay a poll tax as a prerequisite to voting.

In *Carlock* v. *Chattanooga*, 130 Tenn. 330, 170 S. W. 475, 476, the Act undertook to amend the charter of Chattanooga to regulate the bringing of damage suits in personal injury cases which, the Court said, "was inconsistent with the general laws of the land."

In *State ex rel.* v. *Trotter*, 153 Tenn. 30, 284 S. W. 925, 926, the Act provided for free textbooks for school children in counties of a certain population. The Act was stricken down for the following reasons:

"No reason is suggested, and none can be conceived of, why the citizens of counties of the designated population should be given the benefits and onerated with the burdens incident to this legislation not enjoyed by or imposed upon citizens of other counties of the state."

Upon full consideration of all the authorities, the Court is of opinion that the Act is constitutional.

The decree of the Chancellor is affirmed.

All concur.