IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief June 28, 2006

## DAVID G. MILLS v. SHELBY COUNTY ELECTION COMMISSION, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-1565-3     The Honorable D. J. Alissandratos, Chancellor**

---

**No. W2005-02883-COA-R3-CV - Filed August 8, 2006**

---

Plaintiff/Appellant filed suit under the Tennessee Declaratory Judgment Act asserting that the legislation authorizing the use of electronic voting machines in some jurisdictions violated Art. I, § 5 and Art. IV, § 1 of the Tennessee Constitution.  The Shelby County Chancery Court dismissed Plaintiff/Appellant's complaint pursuant to Tenn. R. Civ. P. 12.02(6).  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

David G. Mills, Pro Se, of Cordova, Tennessee

Felisa N. Cox, Assistant County Attorney, for Appellee, Shelby County Election Commission

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Janet M. Kleinfelter, Senior Counsel for Appellee, State of Tennessee Attorney General

## OPINION

David G. Mills ("Appellant") is an attorney and a registered voter in Shelby County, Tennessee.  On August 24, 2005, Mr. Mills filed suit under the Declaratory Judgment Act against the Shelby County Election Commission (the "Commission").  Mr. Mills asserts that the use of electronic voting machines by the Commission violates Art. I, § 5 and Art. IV, § 1 of the Tennessee Constitution, and the statutes so authorizing electronic voting are unconstitutional.[1]  Mr. Mills seeks, *inter alia*, to have the trial court declare that the Commission "must use a system of voter verified,

---

[1] T.C.A. § 2-5-206, T.C.A. § 2-8-204, T.C.A. § 2-8-110, T.C.A. § 2-8-113, T.C.A. § 2-9-101, T.C.A. § 2-9-110, and T.C.A § 2-17-110.

tangible paper ballots that are capable of being placed by the voters into an appropriate ballot box for later tabulation." Pursuant to Tenn. R. Civ. P. 24, on August 30, 2005, Mr. Mills served a copy of the Complaint on the Attorney General (together with the Commission, "Appellees"). Pursuant to Tenn. R. Civ. P. 24.01 and T.C.A. § 8-6-109(b)(9), on September 29, 2005, the Attorney General petitioned the trial court to intervene in the case. On November 30, 2005, Mills filed, by consent, an amended complaint. The parties agreed to the Attorney General's intervention and, on December 9, 2005, an Agreed Order of Intervention was entered by the trial court. In the interim, on November 3, 2005, the Attorney General filed a motion to dismiss Mr. Mills' Complaint in its entirety on the grounds of lack of standing and failure to state a claim upon which relief can be granted under either Art. I, § 5 or Art. IV, § 1 of the Tennessee Constitution. On November 7, 2005, the Commission also filed a Motion to Dismiss, which adopted and incorporated the Motion and memorandum of law filed by the Attorney General.

On November 30, 2005, Mr. Mills filed a motion for leave to amend his Complaint, asserting that only minor changes had been made to the Complaint and that no prejudice would result to the Commission or to the Attorney General. The parties ultimately agreed to the filing of the Amended Complaint. The Amended Complaint was filed on December 2, 2005 and reads, in pertinent part, as follows:

## BACKGROUND

5. Shelby County, Tennessee presently requires its citizens to vote on electronic voting machines that produce no paper ballot or no paper verification of the vote cast.

6. The Plaintiff has been required, as have most, if not all of Shelby County residents, to vote on these paperless machines for the last several elections, and Plaintiff presently intends to be a Shelby County resident voter for many years to come.

7. The Plaintiff, and the other citizens of Shelby County have no means of verifying that their votes are actually being properly recorded when their votes are cast on paperless mechanical or electronic voting machines.

8. The Plaintiff, as well as other citizens of Shelby County, knows that when the ballot is paperless, poll workers have no means to review a questionable vote to determine the intent of the voter.

9. The Plaintiff, as well as the other citizens of this county, knows that with paperless mechanical or electronic voting, the poll workers or other interested citizens have no means to statistically estimate whether the votes are being properly recorded and tabulated.

10.  The Plaintiff, as well as other citizens of this county, knows that with paperless mechanical or electronic voting there is only one system of tabulation and that no secondary system of tabulation exists to verify or check the one and only system of tabulation.

11.  The Plaintiff, as well as other citizens of this county, knows that with paperless mechanical or electronic voting, since no secondary system of cross-tabulation exists, there is no verifiable means of performing a legitimate recount of any election that might be questionable, close, or suspicious; with paperless voting, a recount is merely a copycat procedure, not a legitimate crosscheck.

12.  Upon information and belief, the Plaintiff avers that these electronic voting systems may also disenfranchise voters in the event that voter turnout is far greater than expected; since each voter must wait his turn to use the machine, the possibility of too few machines, causing discouraging delays, is quite real.

13.  Upon information and belief, the Plaintiff avers that these electronic voting systems may disenfranchise voters when there are power outages or other malfunctions of the paperless machines during the election process.

14.  Upon information and belief, the Plaintiff would aver that even in a state election contest, a paperless voting machine's cumulative tabulations are not an equivalent evidentiary replacement for paper ballots; paperless voting makes judicial review of state election contests far less legitimate than election contests involving paper ballots.

*                                *                                *

16.  Paperless voting systems, especially paperless electronic voting systems, require the citizens of this county have unwarranted faith in the integrity of the system; they reduce both the recount process and election contests to near legal fictions.

17.  Upon information and belief, the Plaintiff avers that one or more private corporations manufacture the electronic voting systems used by the Shelby County Election Commission and that the software used in these electronic systems remains the proprietary trade secret of the manufacturer.

18.  Upon information and belief, the Plaintiff avers that the Shelby County Election Commission does not independently possess the means or the ability to produce its own software for these machines and must rely upon the training, skill and integrity of private corporations or their employees to determine whether the software running these machines can properly record and count the votes cast on these machines.

19.  Upon information and belief, the Plaintiff avers that in order to operate the electronic voting machines which record and count the votes of the citizens of Shelby County, the Shelby County Election Commission must rely upon the technical expertise of individuals and corporations who are not elected, who are not appointed, who are not sworn to uphold the Constitutions of the United States or the State of Tennessee, or who may be unduly partisan; and perhaps without realizing it, the Shelby County Election Commission may even be relying upon the employees of corporations who may not, or could not, have passed criminal background checks, or it may be relying upon persons who have been required to pass religious, racial, sexual or political tests to obtain employment, or it may be relying on persons who could even be citizens of a foreign country, or, in the worst possible case, it could be relying on foreign persons who are enemies of the state.

20.  Upon information and belief, the Plaintiff also avers that the central tabulators, which compile the votes from each precinct, are also privately owned and also have proprietary software that the manufacturers claim to be a trade secret, and are also subject to most, if not all, of the same problems as the electronic voting machines themselves.

21. The Plaintiff brings this cause of action to have this court declare that the voting methodology and process currently in use in Shelby County by the Shelby County Election Commission, along with the statutes that permit this voting methodology and process, are in violation of the Tennessee Constitution and are therefore respectively illegal and unconstitutional.

\*                                    \*                                    \*

## THE TENNESSEE CONSTITUTIONAL REQUIREMENTS

23.  Article I, § 5, of the Tennessee Constitution states in relevant part: "The elections shall be free and *equal*. . . ."

24.  Furthermore, Article IV, § 1, of the Tennessee Constitution states in relevant part: "The General Assembly shall have the power to enact laws . . .. to secure . . . the *purity* of the *ballot box*."

25.  However, the General Assembly, when it enacted the Tennessee Election Code made the following legislative enactment (in effect, a codified preamble to the election Code) in TCA § 2-1-102:

> "The purpose of this title is to regulate the conduct of all elections by the people so that: (1) The freedom and purity of the ballot are secured."

26.  Of obvious and important note is that the Election Code preamble omits two very important words from the Tennessee Constitution: (1) the word *equal* from Article I, § 5, and (2) the word *box* from Article IV, § 1.

27.  Thus the General Assembly, when it enacted the preamble to the Tennessee Election Code, by omitting the two crucial words of *equal* and *box*, enacted two systems of possible voting: one system which included a paper ballot and which the framers of the Constitution intended as the standard means of voting, and a second system that was paperless and which was never contemplated by the framers of the Constitution.

28.  Plaintiff avers that these two systems are vastly unequal in the rights the systems grant to the voters and candidates of this state; moreover, Plaintiff avers that the voters in Shelby County, who must vote on paperless systems have vastly inferior voting rights when compared with those other citizens of other counties whose election officials have opted to retain the use of paper ballots.

29.  Plaintiff therefore avers that the two systems violate the Constitutional requirement of equality set forth in Article I, § 5.

30.  Plaintiff also avers that the paperless system now in use also violates the constitutional requirement and standard of a ballot and its box as set forth in Article IV, § 1; the word *box* clearly implies that an individual and tangible ballot must be used to be placed into a

ballot box and thus mandates the usage of an individual and tangible paper ballot.

31. Article IV, § 1 requires a two-part voting system: (1) the individual and tangible paper ballot and (2) its box or receptacle, in its *purity*, this is a system of *duality.*

32. When the General Assembly enacted the provisions of the Election Code that allowed for paperless voting, it provided for an all-in-one system; in its *purity*, this paperless system is a system of *singularity*.

33. Plaintiff avers that when one changes from a voting system of duality to a voting system of singularity, a substantial loss of Constitutional voting rights occurs in the process.

34. Plaintiff avers that it is the loss of the right to an individual and tangible paper ballot that causes the loss of so many substantial voting rights, making paper based systems and paperless systems inherently unequal.

35. The loss of an individual and tangible paper ballot means that a ballot is no longer verifiable to the voter; the voter can no longer verify the name of the candidate he or she has selected, nor can he or she verify any vote for or against any particular referendum, nor can he or she can verify for himself or herself that the vote is in fact recorded.

36. The loss of an individual and tangible paper ballot means that human poll workers can no longer ascertain the will of the voter should there be some questions about the voter's intent.

37. The loss of the individual and tangible paper ballot means that human poll workers can no longer statistically estimate the accuracy of any tabulation, when deemed appropriate, whether or not the initial tabulation was done by human, mechanical or electronic means.

38. Take away the individual and tangible paper ballot and both the recount process and the election contest process become unverifiable copycat procedures with no ability to crosscheck for errors or fraud.

39. The road to paperless voting (and with it, the loss of the individual ballot) began innocently enough with mechanical voting

machines which recorded votes by pulling a lever after selections were made and which tallied the votes as they occurred; these machines and how they worked were beyond the comprehension of the average voter and poll worker.

40. Even the early mechanical voting machines that were beyond the comprehension of the average voter and poll worker caused enough voter angst, distrust and suspicion; but, the new electronic voting machines are so far beyond the comprehension of the average voter and poll worker that voter angst, distrust, and suspicion has reached epidemic levels.

41. With the loss of the individual paper ballot becoming widespread, and with electronic voting machines becoming common, both the quality of elections, and the purity of the ballot box, along with the brilliance of its simple duality, have been lost; and the result is a crisis of confidence in the election process.

On November 30, 2005, Mr. Mills filed his Response to the Attorney General and Commission's motions to dismiss. Mr. Mills asserts, *inter alia*, that he has standing to bring the lawsuit by virtue of the Declaratory Judgment Act, and that the Complaint presents a justiciable controversy because there is an inherent inequality between voting on a tangible paper ballot and voting on any paperless system. In essence, Appellant asserts that citizens of other Tennessee counties have the right to vote on paper ballots and have paper records of their votes, while he is required to vote in Shelby County with an electronic voting machine that is operated by software owned by a private corporation. Primarily he asserts that he is without the ability to audit or verify the election results, which he could do with paper ballots. A hearing on the motions to dismiss was held on December 2, 2005. On December 9, 2005, the trial court entered its "Final Order of Dismissal," by which the trial court dismissed Mr. Mills' Complaint and Amended Complaint "in their entirety and with prejudice pursuant to Tenn. R. Civ. P. 12.02(6)."

Mr. Mills appeals from the Final Order and raises two issues for review as stated in his brief:[2]

I. Whether the Chancery Court erred in dismissing Appellant's cause of action if the dismissal was based on the Chancellor's conclusion that Appellant did not have standing to sue.

II. Whether the Chancery Court erred in dismissing Appellant's cause of action if the dismissal was based on the Chancellor's

---

[2] Mr. Mills also filed an Application to the Supreme Court to Assume Jurisdiction pursuant to T.C.A. § 16-3-201(d). On March 2, 2005, the Supreme Court issued an Order denying Mr. Mills' application.

conclusion that Appellant did not state a claim upon which relief could be granted.

We first note that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn.1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Sev., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn.1994).

Mr. Mills brings his suit under the Tennessee Declaratory Judgment Act, specifically T.C.A. § 29-14-103 (2000), which reads, in relevant part, as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The Declaratory Judgment Act exists to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." T.C.A. § 29-14-113. Although the statute is to be liberally construed, *id.*, it is well settled that "certain limitations must be placed upon the operation of the statute." *Johnson City v. Caplan*, 253 S.W.2d 725, 726 (Tenn. 1952). Several of these limitations were discussed by our Supreme Court in *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186 (Tenn. 2000), to wit:

> [A] declaratory judgment action cannot be used by a court to decide a theoretical question, *Miller v. Miller*, 149 Tenn. 463, 261 S.W. 965, 972 (1924), render an advisory opinion which may help a party in another transaction, *Hodges v. Hamblen County*, 152 Tenn. 395, 277 S.W. 901, 902 (1925), or "allay fears as to what may occur in the future," *Super Flea Mkt.*, 677 S.W.2d at 451. Thus, in order to maintain an action for a declaratory judgment a justiciable controversy must exist. *Jared v. Fitzgerald*, 183 Tenn. 682, 195 S.W.2d 1, 4 (1946). For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a legally

> protectable interest must be at stake. ***Cummings v. Beeler***, 189 Tenn.
> 151, 223 S.W.2d 913, 915 (1949). If the controversy depends upon a
> future or contingent event, or involves a theoretical or hypothetical
> state of facts, the controversy is not justiciable. ***Story v. Walker***, 218
> Tenn. 605, 404 S.W.2d 803, 804 (1966). If the rule were otherwise,
> the "courts might well be projected into the limitless field of advisory
> opinions."

*Id*. at 193.

As set out in his Complaint and reiterated in his brief, Mr. Mills' primary concern is that, "without a paper ballot or paper record of his vote, there can be no meaningful recount in a questionable election outcome, nor can there be a meaningful election contest if one becomes necessary;" and that, consequently, his voting rights are diminished "when compared with other citizens of Tennessee who get a paper ballot of record." Even if this Court were to concede that paperless voting could disenfranchise voters under certain circumstances, there is no indication in the Complaint that voters are **presently** being disenfranchised by the current voting system. In short, Mr. Mills' allegations appear to based on conjecture and not upon actual events. The hypothetical nature of his Complaint is evidenced by his use of terms such as "might" (e.g. "There is no verifiable means of performing a legitimate recount of any election that ***might*** be questionable..."), and "may" (e.g. "[T]hese electronic voting systems ***may*** disenfranchise voters..."). As noted by our Supreme Court in ***Brown v. Williamson***, *supra*, "[i]f the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable." ***Id.*** at 193. From a complete reading of the Complaint, and construing the allegations therein in a light most favorable to Mr. Mills, ***Cook Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934 (Tenn.1994), we conclude that Mr. Mills presents a theoretical question of what **may** happen in future elections, which question does not rise to the level of a justiciable controversy. ***See Brown v. Williamson***, 18 S.W.3d at 193. However, even if we assume *arguendo* (which we do not) that Mr. Mills' claims rise to the level of a justiciable controversy, we nonetheless conclude that he has failed to state a claim upon which relief can be granted under either Art. I, §5 or Art. IV, §1 of the Tennessee Constitution.

## Art. I, § 5

Art. I, § 5 of the Tennessee Constitution provides, in pertinent part, that:

> [T]he elections shall be free and equal, and the right of suffrage, as
> hereinafter declared, shall never be denied to any person entitled
> thereto, except upon conviction by a jury of some infamous crime....

Mr. Mills asserts that the Commission's authorization of the use of electronic voting machines, as opposed to paper ballots, creates an inequality in voting, thereby violating this section of our Constitution. We disagree. The use of "free and equal" in Art. I, § 5 of the Tennessee Constitution

refers to the rights of suffrage and not to the logistics of how the votes are cast: "The rights of suffrage which section 5 declares shall be 'free and equal' is the right it refers to in section 5 of article 1, as 'hereinafter declared,' meaning as declared in section 1 of article 4." *Earnest v. Green County*, 138 Tenn. 442, 198 S.W. 417 (Tenn. 1917); "it has previously been held that the 'free and equal' requirement [of Art. I, § 5] relates only to the rights of suffrage and not the nature of elections. *Compare*, *Bemis Pentecostal Church v. State*, 731 S.W.2d 897, at 901 (Tenn.1987), cert. denied, 485 U.S. 930, 108 S.Ct. 1102, 99 L.Ed.2d 264 (1988)." *State ex rel. Hooker v. Thompson*, 1996 WL 570090, at *4 (Tenn. Oct. 2, 1996).

In his Complaint, Mr. Mills makes no allegation that he, or any other voter, has been denied the free exercise of suffrage as a result of the use of electronic voting machines, nor has he shown that he, or any other voter, has actually been deprived of having his or her vote counted as cast. Consequently, there is no showing that electronic voting curtails the free and equal right to suffrage as contemplated by Art. I, § 5 of the Tennessee Constitution.

## Art. IV, § 1

Art. IV, § 1 of the Tennessee Constitution reads, in relevant part, as follows:

> The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.

Mr. Mills asserts that the use of electronic voting machines violates this section of our Constitution in that this means of voting "fails to secure the purity of a tangible paper ballot and its box."

It is well settled that the authority of the Tennessee Legislature to control the conduct of elections held in this State is manifest. *See Trotter v. City of Maryville*, 191 Tenn. 510, 235 S.W.2d 13 (1950). However, "[t]his right of control does not, and cannot, go beyond the limitation expressed in Article I, Section 5 of the Constitution wherein it is provided in substance that the right of suffrage will not be denied any person, except on conviction." *Trotter*, 235 S.W.2d at 521-22. As discussed above, Mr. Mills' Complaint does not allege that he, or any other voter, has been denied the right to vote, or actually had his or her vote lost or miscounted, as a result of the Commission's authorization of the use of electronic voting machines.

In his argument, Mr. Mills asserts that the use of the words "ballot box" in Art. IV, § 1 requires the use of paper ballots. We disagree. T.C.A. § 2-1-104(2)(2003) defines "ballot" as "either a piece of paper or the labelled face of a voting machine prepared by appropriate election officials for voters to use to cast their votes." Furthermore, our Supreme Court has reasoned that the word "ballot" as it occurs in the Tennessee Constitution is "not used in a literal sense but merely by way of designating a method of conducting elections that will guarantee the secrecy and integrity of the ballot." *Mooney v. Phillips*, 173 Tenn. 398, 118 S.W.2d 224, 226 (1938). The *Mooney* Court went on to uphold the use of voting machines in Tennessee based upon the authority of the legislature to

"provide different methods of exercising the elective franchise...." *Id*. In short, while the right to vote is fundamental, there is no recognized right to a certain balloting system. Furthermore, there is no right to a perfect voting system. The legislature has made ample provisions for the use of voting machines in place of the old-fashioned, paper ballot system. Adequate safeguards have been instituted to assure free and equal elections and to maintain the purity of the ballot. *See* T.C.A. § 2-9-101 – T.C.A. § 2-9-117. The Complaint in this case does not allege facts that rise to the level of a violation of the Plaintiff's constitutional rights.

In *Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003), the Court was faced with a question similar to the question in this case and summed it up succinctly, stating:

> [T]he question is whether using a system that brings about numerous positive changes (increasing voter turnout, having greater accuracy than traditional systems, being user-friendly, decreasing the number of mismarked ballots, saving money, etc.), but lacks a voter-verified paper ballot, constitutes a "severe" restriction on the right to vote. [6] [7]  We cannot say that use of paperless, touchscreen voting systems severely restricts the right to vote. No balloting system is perfect. Traditional paper ballots, as became evident during the 2000 presidential election, are prone to overvotes, undervotes, "hanging chads," and other mechanical and human errors that may thwart voter intent. See generally Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

*Id.* at 1106.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed to the Appellant, David G. Mills, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-11-